32778. ATLANTIC COAST LINE RAILROAD COMPANY
*et al v.* SWEATMAN.

270

DECIDED MARCH 28, 1950.

*W. Neal Baird, Neely, Marshall & Greene,* for plaintiffs in error.

*James R. Venable, H. C. Morgan, Jackson L. Barwick,* contra.

MacIntyre, P. J. ■ Code § 94-503 provides that "all railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads." The answer to whether or not the crossing in the present case comes within either of the two classifications in the statute, "public roads" or "private ways established by law," will be determinative of the question of the defendants' duty to maintain the crossing in good order and also determinative of the question whether the defendants were guilty of negligence per se in allegedly failing to keep and maintain the crossing in good order. A public road may have its origin in a legislative act, in the order of a court of competent jurisdiction, or may come into existence by dedication, or by prescription. *Southern Railway Co. v. Combs,* 124 *Ga.* 1004 (2) (53 S. E. 508). Private ways may be established by law by the ordinary upon application, or by prescription. Code §§ 85-1401, 83-101, 83-112. There is neither allegation nor intimation in the petition that the crossing is a public road by virtue of legislative act, by order of a court of competent jurisdiction, or that it is a private way by order of the ordinary upon application. The question of whether the crossing comes within the classifications of the statute narrows, therefore, to whether the crossing is a public road by dedication or prescription, or a private way by prescription. Construing the petition most strongly against the pleader, there is no sufficient allegation, or combination of allegations, to constitute the crossing a public road or private way by prescription. The allegations that the crossing has been in uninterrupted use by the public for more than twenty years do not show that the use by the public has been adverse. Even were we to assume that there is a sufficient allegation of adverse use, there is still lacking the essential allegation that the adverse users kept the crossing in repair during the alleged period of use. The absence of these two essentials is fatal to the claim that the crossing became a public road or private way within the meaning of the statute by prescription. *Short v. Walton,* 61 *Ga.* 29; *Wool-*

*bright* v. *Cureton,* 76 *Ga.* 107, *Charleston & W. C. Ry. Co.* v. *Fleming,* 118 *Ga.* 699 (45 S. E. 664), and cases cited; *Burnum* v. *Thomas,* 71 *Ga. App.* 690 (31 S. E. 2d, 925); *First Christian Church at Macon* v. *Realty Investment Co.,* 180 *Ga.* 35 (178 S. E. 303). There was no sufficient allegation that the crossing had become a public road or private way by prescription. The remaining question is whether there had been a dedication of the crossing to public use such as to bring it within the classifications of the statute in question. " 'If the owner of lands either expressly or by his acts dedicates the same to public use, and the same is so used for such a length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, he can not afterward appropriate it to private purposes.' Civil Code § 3591 [now Code § 85-410]. A dedication to public use is, however, not complete until two things appear; that is, an intention on the part of the owner to dedicate his property to the public use, and an acceptance on the part of the public of the property for such use. *Mayor and Council of Madison* v. *Booth,* 53 *Ga.* 609; *Parsons* v. *Trustees,* 44 *Ga.* 529; *Ga. R. Co.* v. *Atlanta,* 118 *Ga.* 486; *Kelsoe* v. *Oglethorpe,* 120 *Ga.* 951. The intention to dedicate need not be shown by an express declaration to that effect. Such intention may be inferred from an acquiescence by the owner in the use of his property by the public. But the use must be of such a character as to clearly indicate that the public has accepted the dedication of the property to the public use. The acceptance need not be express, but if the way be used by the public and worked or treated by the public authorities as a part of a system of public highways in the place where the way is claimed, and this is continued 'for such a length of time that the public accommodation and private rights might be materially affected by the interruption of the enjoyment,' the dedication to the public use is complete as against the owner of the fee. However, the acts relied on to establish the dedication must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote the same to a definite public use. The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the

property to a public use, unless it appear clearly that there was an intention to dedicate, and that this dedication was accepted by the public authorities, either in express terms or by implication resulting from the maintenance of a way as public in its nature. Where there is no intention to dedicate, but the public has taken possession of the property of an individual, and used and maintained it as a highway for a period of twenty years or more, a highway by prescription becomes complete. When there is an intention to dedicate, the maintenance of a way for a less time will bring into existence a completed highway by dedication. See, in this connection, . . *Mayor of Sandersville* v. *Hurst*, 111 Ga. 453." *Healey* v. *Atlanta*, 125 *Ga.* 736 (54 S. E. 749). There are in the petition no sufficient allegations to show an express intention to dedicate. It remains then to ask if there is a sufficient allegation of dedication by implication together with an express or implied acceptance by the public, so as to bring the crossing within the classifications of the statute. "Intention to dedicate may be inferred from acquiescence by the owner in the use of his land by the public, if the use be of such character as to clearly indicate that the public accepted the dedication to the public use." *City of LaFayette* v. *Walker County*, 151 *Ga.* 786 (108 S. E. 218). Count 2 of the petition contains this allegation: "Petitioner shows that said crossing has been accepted and recognized as a way and road over defendants' right of way and railway tracks at this point by the municipal authorities of the City of Decatur and these public authorities have worked on said crossing keeping same passable and improving same." If this allegation be true, and we assume its truth as against demurrer, the crossing may or may not have become a public road by dedication, depending upon the evidence introduced upon the trial to prove the implied intention to dedicate on the part of the defendants and the express or implied acceptance by the municipal authorities. "Dedication . . is a conclusion of fact to be drawn by the jury from the circumstances of each particular case; the whole question, as against the owner of the soil, being whether there is sufficient evidence of an intention on his part to dedicate the land to the public use as a highway." *Harding* v. Jasper, 14 Cal. 642, and see the annotations in 27 Am. D. 559 and 121 Am.

St. R. 578. Since, under the allegations of count 2, the jury might find that the crossing became a public road within the meaning of Code § 94-503, the court did err in overruling the defendants' demurrers to that count which moved to strike the references in that count to the Code section and the defendants' duty under that section to keep the crossing in good order, and consequently, count 2 stated a cause of action. There is, however, no theory, under the allegations of count 1, by which the crossing could be found to have become a public road or private way within the meaning of the statute, as there are no sufficient allegations from which dedication could be inferred and we have already disposed of the other possibilities by which the crossing might come within the meaning of the statute. The court erred, therefore, in overruling the demurrers to this count which moved to strike all reference to the defenders' duty to maintain the crossing in good order under such Code section.

■ With these allegations concerning the defendants' duty to maintain the crossing in good order under Code § 94-503 stricken from count 1 of the petition, as they should have been, the remaining allegations are insufficient to show any breach of duty by the defendants owed to the plaintiff. The plaintiff was unquestionably not an invitee under the allegations of the petition during her use of the crossing; and, whether, under the allegations, she was a licensee or trespasser, and we do not decide which, the only duty owed her by the defendants was not to injure her wilfully or wantonly, and there is no allegation, express or implied, that the plaintiff's injuries resulted from the wilfulness or wantonness of the defendants nor is there any intimation that the crossing contained a pitfall or mantrap. Count 1 of the petition did not state a cause of action against the defendants and the court should have sustained the defendants' demurrer to that count and stricken the entire count from the petition. *Atlanta & West Point R. Co.* v. *Hyde*, 45 *Ga. App.* 548 (165 S. E. 466).

*Judgment reversed as to count 1 and affirmed as to count 2. Gardner and Townsend, JJ., concur.*